EXHIBIT A



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

ANA RODRIGUEZ
Vs.                                          C.A. No.      2014 CA 000735 B
DISTRICT OF COLUMBIA

### INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order.  Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge HERBERT B DIXON JR
Date:  February 6, 2014
Initial Conference: 9:30 am, Friday, May 09, 2014
Location:  Courtroom 415
                500 Indiana Avenue N.W.
                WASHINGTON, DC  20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc



## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

*Ana Rodriguez*
_____
Plaintiff

**14 - 0 0 0 0 7 3 5**

vs.

Case Number _____

*District of Columbia, et. al.*
_____
Defendant

## SUMMONS

To the above named Defendant: *Daisy Car*
*c/o DHS, 64 N.Y. Ave, NE; 6th Fl., WDC 20002*

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Janett P. Henry*
_____
Name of Plaintiff's Attorney

*8701 Georgia Ave. #403*
_____
Address
*Silver Spring, MD 20910*

*(301) 562-1360*
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date _____*2/6/14*_____

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                    CASUM.doc

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| **ANA RODRIGUEZ** | : | |
| 4116 Ames Street, NE | | |
| Washington, DC 20019 | : | |
| | | |
| **Plaintiff,** | : | 14 - 0 0 0 0 7 3 5 |
| | | |
| v. | : | Civil Action No. _____ |
| | | |
| **DISTRICT OF COLUMBIA** | : | |
| Serve:  Vincent Gray, Mayor | | |
| 1350 Pennsylvania Avenue, NW | : | **JURY DEMANDED** |
| Washington, D.C. 20001 | | |
| | : | |
| Serve:  Irvin B. Nathan, Esquire | | |
| Attorney General, DC | : | |
| 441 4th Street, NW | | |
| Washington, D.C. 20001 | : | |
| | | |
| **and** | : | |
| | | |
| Wayne Swann | : | |
| c/o Department of Human Services | | |
| 64 New York Avenue, NE; 6th Floor | : | |
| Washington, D.C. 20002 | | |
| | | |
| **and** | : | |
| | | |
| Debra Crawford | : | |
| c/o Department of Human Services | | |
| 64 New York Avenue, NE; 5th Floor | : | |
| Washington, D.C. 20002 | | |
| | | |
| **and** | : | |
| | | |
| Daisy Carr | : | |
| c/o Department of Human Services | | |
| 64 New York Avenue, NE; 6th Floor | : | |
| Washington, D.C. 20002 | | |
| | | |
| **Defendants.** | : | |

RECEIVED

FEB  6 2014

Dist.       of the    Columbia
Wa         D.C.

## COMPLAINT

-2-

## Jurisdiction

1.  This Court has original subject matter jurisdiction over this case by virtue of § 11-921 of the District of Columbia Code and personal jurisdiction over Defendants by virtue of § 13-334 of the District of Columbia Code.

2.  The District of Columbia was provided with notice of this claim by letter dated March 29, 2013.

## COMPLAINT
### (Employment Discrimination)

### Introduction

1.  Ana Rodriguez brings suit for injuries she sustained in violation of the District of Columbia Human Rights Act, D.C. Code, §§2-1401 through 2-1403. Defendants discriminated against Plaintiff on the basis of her race (Hispanic), national origin (Puerto Rican), participation in prior protected activity, failed to accommodate her disability, and subjected her to a hostile work environment during the course of her employment with the District of Columbia Department of Human Services.

### Jurisdiction & Venue

2.  This Court has jurisdiction over this cause of action pursuant to D.C. Code §2-1403.16, as the plaintiff alleges violations of the D.C. Human Rights Act, and pursuant to D.C. Code § 11-921 as the amount in controversy exceeds five thousand dollars ($5,000.00).

3.  This Court has personal jurisdiction over Defendants by virtue of D.C. Code # 13-334.

4.  The District was provided with notice of these claims by letters dated July 19, 2013

-3-

## Parties

5.    Plaintiff, Ana Rodriguez ("Rodriguez"), is an Hispanic resident of the District of Columbia, who was employed at the D.C. Department of Human Services from July, 2010 until termination of her employment on or about August 16, 2013.

6.    Defendant, District of Columbia, is a governmental organization and municipal corporation.  The Department of Human Services ("DHS") is a subordinate agency of the District of Columbia government.

7.    Defendant, Wayne Swann ("Swann") (African American) was the Director of Human Resources for DHS, at all times relevant herein, and an "employer" within the meaning of DCHRA because he committed and/or aided and abetted the unlawful acts to which Plaintiff was subjected.  He is being sued in his individual capacity.

8.    Defendant, Debra Crawford ("Crawford") (African American) was the Deputy for the Family Services Division of DHS, at all times relevant herein, and an "employer" within the meaning of DCHRA because she committed and/or aided and abetted the unlawful acts to which Plaintiff was subjected.  She is being sued in her individual capacity.

9.    Defendant, Daisy Carr ("Carr") (African American) was the Human Resources Liaison Specialist for DHS, at all times relevant herein, and an "employer" within the meaning of DCHRA because she committed and/or aided and abetted the unlawful acts to which Plaintiff was subjected.  She is being sued in her individual capacity.

-4-

## Facts

10.  In July, 2010 Rodriguez was hired as a Grade 5, Staff Assistant/Intern in the Family Services Administration ("FSA") of DHS and assigned to work on the Parent and Adolescent Support Services ("PASS") Program.

11.  In the first few months of Rodriguez's internship, she represented the PASS Program at the monthly senior management meetings where Defendant Carr and other African American managers made racially derogatory remarks about Rodriguez's immediate supervisor, Program Manager Hillary Cairns (Caucasian). Defendant Crawford participated in some of these meetings and did nothing to stop the inappropriate conduct.

12.  The racially derogatory remarks included: "she rides her bike to work so I know she smells like a wet dog"; "she belongs to a club where white women have black husbands"; " I wonder what her black husband seen in her"; "she is funny looking with no rear end and too skinny"; "I am tired of all these black men dealing with women of other races"; "I can't believe they hired a white woman to work with our black youth"; and "picture her working with poor black families and going on visits, like if she really cares." Although Rodriguez expressed her discomfort at hearing these comments, Defendant Carr and the others persisted.

13.  In September, 2010 Rodriguez was offered a Grade 9 Staff Assistant position and was scheduled to begin orientation for the position.

14.  However, a few days before the orientation, Rodriguez was participating in another meeting with Defendants Carr and Crawford as well as other African American managers when they again made racially-derogatory comments about Hillary Cairns (Caucasian). Rodriguez

-5-

expressed her displeasure at hearing these comments and left the room before the meeting concluded.

15.   Upon information and belief, Carr made negative comments to Cairns about Rodriguez's conduct at the meeting, which Cairns proceeded to address with Rodriguez. In explaining her actions, Rodriguez disclosed to Cairns some of the racially derogatory comments that Defendant Carr and other African American managers made during the subject meeting and several times during the preceding months. Upon information and belief, Cairns shared this information with Defendant Crawford who then shared the incident with other managers and staff.

16.   At the end of that work day, Defendant Crawford's assistant advised Rodriguez that "everyone was mad" with her.

17.   The following Monday when Rodriguez arrived at work to begin her orientation for the Grade 9 Staff Assistant position, she learned that Defendant Carr was re-writing the job description as a pay grade 6, level 4 Clerical Assistant. At the time, several African Americans in FSA with less or equal qualification to Rodriguez were being paid at the Grade 9 level in clerical assistant positions.

18.   After Rodriguez complained about the racially-derogatory comments in the managers meeting she was isolated in the workplace, cut off from overtime and training opportunities, barred from continuing her work with the emergency liaison officer and any other opportunity that could have helped her advance in the workplace.

19. In addition to stalling the paperwork for Rodriguez's new position, Carr began

-6-

treating Rodriguez in a negative manner, publicly demeaning and intimidating her about the viability of her continued employment at DHS, including through making the following comments to Rodriguez: "you are here to take notes and not be heard;" "you should be happy with your pay because it could have been less;" "you will not make more than what I started making in the government"; "I know Ondarya Hall who is on the HR Board at 441 and she can change your outcome;;" and "I'm taking vacation, but you will be hired before Thanksgiving if I am not busy."

20. By the end of December, 2010 Defendant Carr still had not processed the paperwork for Rodriguez's new Clerical Assistant position. Rodriguez discussed her dismay with the lengthy delay with Defendant Crawford who did nothing to rectify the obvious retaliation by Defendant Carr.

21. In January, 2011 Rodriguez discussed Carr's discriminatory and retaliatory treatment of her with Defendant Swann, but he did nothing to address the matter.

22. On or about March 31, 2011, Defendants Crawford and Carr summoned Rodriguez to a meeting to discuss her employment at DHS. Defendants Crawford and Carr disclosed that Rodriguez's paperwork would be processed to place her in the Clerical Assistant position at a Grade 5 with no benefits, but that after a year in the position she would receive benefits and a pay raise.

23. Beginning in April, 2012 Rodriguez began to inquire about her pay raise and benefits. After repeated inquiries to Defendants Carr, Swann and Crawford with no response, sometime in July, 2012 Defendant Carr advised that Rodriguez's benefits would take effect by

-7-

July 20, 2012. Rodriguez had to wait until October, 2012 before she started to receive benefits but no pay raise.

24. On January 25, 2013 Rodriguez attended a DHS job fair, applied for and was offered a Grade 9 Social Services Representative position within the Economic Security Administration ("ESA"). One of Rodriguez's co-workers (African American female) also attended the job fair, applied for and was offered a similar position.

25. On February 6, 2013 Rodriguez was notified that she would no longer be hired for the Grade 9 Social Services Representative position in ESA or any of the nine  positions ESA had open at the job fair, and that all positions had been filled.

26. As a direct and proximate result of the pattern of discrimination, retaliation and hostile work environment to which Rodriguez was subjected for over two (2) years, she suffered severe emotional distress and was forced to take leave from work under the DC Family and Medical Leave Act ("FMLA").

27. When Rodriguez could not return to work at the conclusion of her FMLA leave in June, 2013, she requested accommodation for her emotional disability through August, 2013, based on her doctor's advice and recommendation, but Defendants refused to accommodate her or even engage in the interactive process.

28. Instead, by letter dated August 14, 2013, Defendants terminated Rodriguez's employment, effective August 16, 2013.

29. Although Defendants were required to provide Rodriguez with advanced notice of

-8-

the intent to terminate her, she did not receive such notice because the one Defendants allegedly sent had an incorrect address despite the agency having Rodriguez's correct address.

30. Based on the pattern of discrimination and retaliation that also created a hostile work environment for Rodriguez, she suffered and continues to suffer severe emotional distress requiring medical treatment.

31. Defendant District of Columbia is liable for the actions of its managers under the doctrine of *respondeat superior*

### Count I
### (Employment Discrimination on the Basis of Race and National Origin)

32. Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

33. As a Hispanic of Puerto Rican descent, Plaintiff is a member of protected classes.

34. Because of her race and/or national origin, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint under the DCHRA.

35. Defendants' foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment.

36. Defendants knew that Plaintiff is an Hispanic of Puerto Rican descent prior to the adverse actions described throughout the Complaint and was aware or should have been aware of the discrimination Plaintiff was subjected to because of her race and national origin.

37. Plaintiff has been treated differently and subjected to different terms and conditions of employment due her  race and national origin.

-9-

38. Defendants have limited, segregated and classified Plaintiff in a way that deprived her of employment opportunities and otherwise adversely affected her status as an employee because of her race and national origin.

39. Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

40. Plaintiff's race and/or national origin were determining factors in Defendants' unlawful conduct toward Plaintiff.

41. The reasons proffered by Defendants for their unlawful conduct are pretextual and defendants cannot offer any legitimate reason for their unlawful conduct.

42. Defendants' aforementioned conduct have been intentional, deliberate, willful, malicious, reckless and in callous disregard of Plaintiff's rights because of her race and national origin.

43. Defendants discriminated against Plaintiff because of her race and/or national origin by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

44. As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

-10-

45. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

46. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages in excess of Five Hundred Thousand Dollars ($500,000.00);

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

c. Award medical costs and expenses incurred as a result of defendants' unlawful conduct;

d. Punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00) against each individual Defendant;

e. Award statutory attorney's fees, costs, and expenses incurred for this action; and

f. Award such other and further relief as is deemed just and proper.

### Count II
### (Employment Discrimination on the Basis of Retaliation)

47. Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

48. Soon after complaining, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of the DCHRA.

49. Defendants subjected Plaintiff to the aforementioned adverse employment actions because of her participation and opposition to the unlawful and discriminatory employment practices of Defendants in violation of the DCHRA.

50. Defendants knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when Plaintiff informed them directly and when they learned of Plaintiff's complaint filed with the Equal Employment Opportunity Commission.

51. The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

52. Plaintiff's prior protected activity was a determining factor in Defendants' unlawful conduct toward her.

53. Similarly situated employees (no known EEO activity) were not subjected to the same, similar or any adverse treatment.

54. Defendants' adverse treatment of Plaintiff was obvious to her co-workers who could and did observe the distress that the treatment caused Plaintiff.

55. Defendants' unlawful created a climate of fear and intimidation for Plaintiff and other employees, which creates a chilling effect in violation of the DCHRA.

56. Defendants' unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

57. Defendants' retaliatory conduct have been intentional, deliberate, willful, malicious, reckless and in callous disregard of Plaintiff's rights because of her participation and opposition to Defendants' discriminatory conduct.

-12-

58.  As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

59.  Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

60.  Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court:

a.  Award compensatory damages in excess of Five Hundred Thousand Dollars ($500,000.00);

b.  Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

c.  Award medical costs and expenses incurred as a result of defendants' unlawful conduct;

d.  Punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00) against each individual Defendant;

e.  Award statutory attorney's fees, costs, and expenses incurred for this action; and

f.  Award such other and further relief as is deemed just and proper.

-13-

## Count III
### (Hostile Work Environment)

61.  Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

62.  As a result of Plaintiff's protected status and participation in protected activity, Defendants' routinely humiliated Plaintiff and engaged in persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile, abusive and offensive workplace environment in violation of the DCHRA.

63.  Plaintiff was regularly and continually subjected to harassing conduct alleged throughout this Complaint, which created a hostile and abusive work environment.

64.  Plaintiff believes she was subjected to a hostile work environment based on her race, national origin, and because of her engagement in protected activity.

65.  Defendants' unlawful conduct was unwelcome.

66.  Defendants knew or should have known of the harassment but failed to adequately investigate, and took no effective or remedial action. despite Plaintiff's complaints the harassment continued unabated, increased over time and culminated in her unlawful termination.

67.  By failing to take appropriate and effective remedial action, Defendants' acted with malice or with reckless or callous indifference to Plaintiff's complaints and rights.

68.  As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional

-14-

opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

69. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

70. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages in excess of Five Hundred Thousand Dollars ($500,000.00);

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

c. Award medical costs and expenses incurred as a result of defendants' unlawful conduct;

d. Punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00) against each individual Defendant;

e. Award statutory attorney's fees, costs, and expenses incurred for this action; and

f. Award such other and further relief as is deemed just and proper.

### Count IV
### (Intentional Infliction of Emotional Distress)

71. Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

72. Defendants' actions against Plaintiff alleged throughout the Complaint were extreme

-15-

and outrageous.

73. As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer severe emotional distress, harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

74. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

75. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages in excess of Five Hundred Thousand Dollars ($500,000.00);

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

c. Award medical costs and expenses incurred as a result of defendants' unlawful conduct;

d. Punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00) against each individual Defendant;

e. Award statutory attorney's fees, costs, and expenses incurred for this action; and

f. Award such other and further relief as is deemed just and proper.

-16-

### Jury demand

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

RUCKER, BROWN & HENRY, P.C.

By:   *Jeanett P. Henry*

Jeanett P. Henry, Bar No. 471052
8701 Georgia Avenue; Suite 403
Silver Spring, MD 20910
(301) 562-1340
JHenry2085@aol.com
***Counsel for Plaintiff***

S. Knapp

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| **ANA RODRIGUEZ** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Civil Action No. 2014 CA 000735B** |
| **DISTRICT OF COLUMBIA**, *et al.* | : | **Judge Herbert B. Dixon, Jr.** |
| **Defendants.** | : | **Next Event:  Initial Conf. 5/9/2014** |

### AMENDED COMPLAINT
### (Employment Discrimination)

COMES NOW Plaintiff, Ana Rodriguez, through counsel, and for her Amended

Complaint against defendants states as follows:

### Introduction

1.   Ana Rodriguez brings suit for injuries she sustained in violation of the

District of Columbia Human Rights Act, D.C. Code, §§2-1401 through 2-1403, and 42 U.S.C. §

1983.  Defendants discriminated against Plaintiff on the basis of her race (Hispanic), national

origin (Puerto Rican),  participation in prior protected activity, disability, failed to accommodate

her disability, and subjected her to a hostile work environment during the course of her

employment with the District of Columbia Department of Human Services.

### Jurisdiction & Venue

2.   This Court has jurisdiction over this cause of action pursuant to D.C. Code

§2-1403.16, as the plaintiff alleges violations of the D.C. Human Rights Act, and pursuant to

D.C. Code § 11-921 as the amount in controversy exceeds five thousand dollars ($5,000.00).

3.   This Court has personal jurisdiction over Defendants by virtue of D.C. Code § 13-

384.

4.   The District was provided with notices of these claims by letters dated July 19, 2013 and February 14, 2014.

## Parties

5.   Plaintiff, Ana Rodriguez ("Rodriguez"), is an Hispanic resident (Puerto Rican background) of the District of Columbia, who was employed at the D.C. Department of Human Services from July, 2010 until termination of her employment on or about August 16, 2013.

6.   Defendant, District of Columbia, is a governmental organization and municipal corporation.  The Department of Human Services ("DHS") is a subordinate agency of the District of Columbia government.

7.   Defendant, Wayne Swann ("Swann") (African American) was the Director of Human Resources for DHS, at all times relevant herein, and an "employer" within the meaning of DCHRA because he committed and/or aided and abetted the unlawful acts to which Plaintiff was subjected.  He is being sued in his individual capacity.

8.   Defendant, Debra Crawford ("Crawford") (African American) was the Deputy for the Family Services Division of DHS, at all times relevant herein, and an "employer" within the meaning of DCHRA because she committed and/or aided and abetted the unlawful acts to which Plaintiff was subjected.  She is being sued in her individual capacity.

9.   Defendant, Daisy Carr ("Carr") (African American) was the Human Resources Liaison Specialist for DHS, at all times relevant herein, and an "employer" within the meaning of DCHRA because she committed and/or aided and abetted the unlawful acts to which Plaintiff was subjected.  She is being sued in her individual capacity.

-3-

## Facts

10.   In July, 2010 Rodriguez was hired as a Grade 5, Staff Assistant/Intern in the Family Services Administration ("FSA") of DHS and assigned to work on the Parent and Adolescent Support Services ("PASS") Program.

11.   In the first few months of Rodriguez's internship, she represented the PASS Program at the monthly senior management meetings where Defendant Carr and other African American managers made racially derogatory remarks about Rodriguez's immediate supervisor, Program Manager Hillary Cairns (Caucasian). Defendant Crawford participated in some of these meetings and did nothing to stop the inappropriate conduct.

12.   The racially derogatory remarks included: "she rides her bike to work so I know she smells like a wet dog"; "she belongs to a club where white women have black husbands"; " I wonder what her black husband seen in her"; "she is funny looking with no rear end and too skinny"; "I am tired of all these black men dealing with women of other races"; "I can't believe they hired a white woman to work with our black youth"; and "picture her working with poor black families and going on visits, like if she really cares." Although Rodriguez expressed her discomfort at hearing these comments, Defendant Carr and the others persisted.

13.   In September, 2010 Rodriguez was offered a Grade 9 Staff Assistant position and was scheduled to begin orientation for the position.

14.   However, a few days before the orientation, Rodriguez was participating in another meeting with Defendants Carr and Crawford as well as other African American managers when they again made racially-derogatory comments about Hillary Cairns (Caucasian). Rodriguez

expressed her displeasure at hearing these comments and left the room before the meeting concluded.

15.  Upon information and belief, Carr made negative comments to Cairns about Rodriguez's conduct at the meeting, which Cairns proceeded to address with Rodriguez.  In explaining her actions, Rodriguez disclosed to Cairns some of the racially derogatory comments that Defendant Carr and other African American managers made during the subject meeting and several times during the preceding months.  Upon information and belief, Cairns shared this information with Defendant Crawford who then shared the incident with other managers and staff.

16.  At the end of that work day, Defendant Crawford's assistant advised Rodriguez that "everyone was mad" with her.

17.  The following Monday when Rodriguez arrived at work to begin her orientation for the Grade 9 Staff Assistant position, she learned that Defendant Carr was re-writing the job description as a pay grade 6, level 4 Clerical Assistant.  At the time, several African Americans in FSA with less or equal qualification to Rodriguez were being paid at the Grade 9 level in clerical assistant positions.

18.  After Rodriguez complained about the racially-derogatory comments in the managers meeting, she was isolated in the workplace, cut off from overtime and training opportunities, barred from continuing her work with the emergency liaison officer and any other opportunity that could have helped her advance in the workplace.

19.  In addition to stalling the paperwork for Rodriguez's new position, Carr began

-5-

treating Rodriguez in a negative manner, publicly demeaning and intimidating her about the viability of her continued employment at DHS, including through making the following comments to Rodriguez: "you are here to take notes and not be heard;" "you should be happy with your pay because it could have been less;" "you will not make more than what I started making in the government"; "I know Ondarya Hall who is on the HR Board at 441 and she can change your outcome;;" and "I'm taking vacation, but you will be hired before Thanksgiving if I am not busy."

20. By the end of December, 2010 Defendant Carr still had not processed the paperwork for Rodriguez's new Clerical Assistant position. Rodriguez discussed her dismay with the lengthy delay with Defendant Crawford who did nothing to rectify the obvious retaliation by Defendant Carr.

21. In January, 2011 Rodriguez discussed Carr's discriminatory and retaliatory treatment of her with Defendant Swann, but he did nothing to address the matter.

22. On or about March 31, 2011, Defendants Crawford and Carr summoned Rodriguez to a meeting to discuss her employment at DHS. Defendants Crawford and Carr disclosed that Rodriguez's paperwork would be processed to place her in the Clerical Assistant position at a Grade 5 with no benefits, but that after a year in the position she would receive benefits and a pay raise.

23. Beginning in April, 2012 Rodriguez began to inquire about her pay raise and benefits. After repeated inquiries to Defendants Carr, Swann and Crawford with no response, sometime in July, 2012 Defendant Carr advised that Rodriguez's benefits would take effect by

-6-

July 20, 2012.  Rodriguez had to wait until October, 2012 before she started to receive benefits but no pay raise.

24.  On January 25, 2013 Rodriguez attended a DHS job fair, applied for and was offered a Grade 9 Social Services Representative position within the Economic Security Administration ("ESA").  One of Rodriguez's co-workers (African American female) also attended the job fair, applied for and was offered a similar position.

25.  On February 6, 2013 Rodriguez was notified that she would no longer be hired for the Grade 9 Social Services Representative position in ESA or any of the nine  positions ESA had open at the job fair, and that all positions had been filled.

26.  As a direct and proximate result of the pattern of discrimination, retaliation and hostile work environment to which Rodriguez was subjected for over two (2) years, she suffered severe emotional distress and was forced to take leave from work under the DC Family and Medical Leave Act ("FMLA").

27.  When Rodriguez could not return to work at the conclusion of her FMLA leave in June, 2013, she requested accommodation for her emotional disability through August, 2013, based on her doctor's advice and recommendation, but Defendants refused to accommodate her or even engage in the interactive process.

28.  Instead, by letter dated August 14, 2013, Defendants terminated Rodriguez's employment, effective August 16, 2013.

29.  Although Defendants were required to provide Rodriguez with advanced notice of

the intent to terminate her, she did not receive such notice because Defendants allegedly sent the notice to an incorrect address despite the agency having Rodriguez's correct address. As a result, Rodriguez lost the opportunity to challenge her termination.

30. Based on the pattern of discrimination and retaliation that also created a hostile work environment for Rodriguez, she suffered and continues to suffer severe emotional distress requiring medical treatment.

31. At all relevant times, Defendants Swann, Crawford, and Carr were acted under color of law and within the scope of their employment for Defendant District of Columbia.

32. Defendant District of Columbia is liable for the actions of its managers under the doctrine of *respondeat superior*.

### Count I (DCHRA)
### (Employment Discrimination on the Basis of Race and/or National Origin)

33. Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

34. As an Hispanic of Puerto Rican descent, Plaintiff is a member of protected classes.

35. Because of her race and/or national origin, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Amended Complaint under the DCHRA.

36. Defendants' foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment.

37. Defendants knew that Plaintiff is an Hispanic of Puerto Rican descent prior to the adverse actions described throughout this Amended Complaint and was aware or should have

been aware of the discrimination Plaintiff was subjected to because of her race and/or national origin.

38.  Plaintiff has been treated differently and subjected to different terms and conditions of employment due her race and/or national origin.

39.  Defendants have limited, segregated and classified Plaintiff in a way that deprived her of employment opportunities and otherwise adversely affected her status as an employee because of her race and/or national origin.

40.  Other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

41.  Plaintiff's race and/or national origin were determining factors in Defendants' unlawful conduct toward Plaintiff.

42.  The reasons proffered by Defendants for their unlawful conduct are pretextual and Defendants cannot offer any legitimate reason for their unlawful conduct.

43.  Defendants' aforementioned conduct have been intentional, deliberate, willful, malicious, reckless and in callous disregard of Plaintiff's rights because of her race and/or national origin.

44.  Defendants discriminated against Plaintiff because of her race and/or national origin by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

45.   As a direct and proximate cause of Defendants' conduct alleged throughout this Amended Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

46.   Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

47.   Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.   Award compensatory damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each Defendant;

b.   Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

c.   Award medical costs and expenses incurred as a result of Defendants' unlawful conduct;

d.   Pre and post judgment interest;

e.   Punitive damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each individual Defendant;

f.   Award statutory attorney's fees, costs, and expenses incurred for this action; and

g.   Award such other and further relief as is deemed just and proper.

-10-

## Count II (DCHRA)
### (Employment Discrimination on the Basis of Retaliation)

48.  Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

49.  Soon after complaining, Plaintiff was subjected to the unlawful conduct and retaliatory actions alleged throughout this Amended Complaint in violation of the DCHRA.

50.  Defendants subjected Plaintiff to the aforementioned retaliatory employment actions because of her participation and opposition to the unlawful and discriminatory employment practices of Defendants in violation of the DCHRA.

51.  Defendants knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned retaliatory actions when Plaintiff informed them directly and when they learned of Plaintiff's complaint filed with the Equal Employment Opportunity Commission.

52.  The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

53.  Plaintiff's prior protected activity was a determining factor in Defendants' unlawful conduct toward her.

54.  Similarly situated employees (no known EEO activity) were not subjected to the same, similar or any adverse treatment.

55.  Defendants' adverse treatment of Plaintiff was obvious to her co-workers who could and did observe the distress that the treatment caused Plaintiff.

56.  Defendants' unlawful actions created a climate of fear and intimidation for Plaintiff and other employees, which creates a chilling effect in violation of the DCHRA.

57. Defendants' unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

58. Defendants' retaliatory conduct have been intentional, deliberate, willful, malicious, reckless and in callous disregard of Plaintiff's rights because of her participation and opposition to Defendants' discriminatory conduct.

59. As a direct and proximate cause of Defendants' conduct alleged throughout this Amended Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

60. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

61. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each Defendant;

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

c. Award medical costs and expenses incurred as a result of defendants' unlawful conduct;

d. Pre and post judgment interest;

e. Punitive damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each individual Defendant;

f. Award statutory attorney's fees, costs, and expenses incurred for this action; and

g. Award such other and further relief as is deemed just and proper.

## Count III (DCHRA)
## (Hostile Work Environment)

62. Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

63. As a result of Plaintiff's protected status and participation in protected activity, Defendants' routinely humiliated Plaintiff and engaged in a persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile, abusive and offensive workplace environment in violation of the DCHRA.

64. Plaintiff was regularly and continually subjected to harassing conduct alleged throughout this Amended Complaint, which created a hostile and abusive work environment.

65. Plaintiff believes she was subjected to a hostile work environment based on her race, national origin, disability, and/or because of her engagement in protected activity.

66. Defendants' unlawful conduct was unwelcome.

67. Defendants knew or should have known of the harassment but failed to investigate adequately, and took no effective or remedial action. Despite Plaintiff's complaints the harassment continued unabated, increased over time and culminated in her unlawful termination.

-13-

68. By failing to take appropriate and effective remedial action, Defendants' acted with malice or with reckless or callous indifference to Plaintiff's complaints and rights.

69. As a direct and proximate cause of Defendants' conduct alleged throughout this Amended Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

70. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

71. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each Defendant;

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

c. Award medical costs and expenses incurred as a result of defendants' unlawful conduct;

d. Pre and post judgment interest;

e. Punitive damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each individual Defendant;

f. Award statutory attorney's fees, costs, and expenses incurred for this action; and

-14-

g. Award such other and further relief as is deemed just and proper.

**Count IV (DCHRA)**
**(Disability Discrimination and Failure to Accommodate)**

72. Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

73. Plaintiff suffers from depression and as such is a qualified individual with a disability.

74. After Plaintiff was forced to take leave under the DCFMLA because of Defendants' discriminatory and retaliatory treatment, Defendants knew and/or perceived her as having a disability within the meaning of the DCHRA.

75. At the end of her FMLA leave, Plaintiff sought accommodation from Defendants' for an additional two months leave to accommodate her disability, but Defendants refused to engage in the interactive process and terminated Plaintiff's employment effective August 16, 2013.

76. At the relevant times herein, Plaintiff's emotional condition substantially limited major life activities, including her ability to care for herself, ability to concentrate, ability to think, and ability to work without reasonable accommodations.

77. At the time of the aforementioned adverse employment actions and to the present, Plaintiff has the necessary knowledge, skills and experience to perform the duties and responsibilities of her position successfully.

78. Defendants' refusal to engage in the interactive process, refusal to provide Plaintiff with reasonable accommodations for her disability, and termination of her employment are

materially adverse actions.  Any reason proffered by Defendants would not be legitimate, but pretext for their unlawful actions.

79. Prior to the adverse actions complained of herein, Defendants were aware of Plaintiff's disability (depression) and/or perceived her to be disabled.

80. Further, because Plaintiff was diagnosed with depression she was entitled to a reasonable accommodation under the DCHRA.

81. The reasonable accommodation Plaintiff requested would not have caused undue burden or hardship on Defendants.

82. Upon information and belief, Defendants provided an accommodation to similarly situated employees who are members of a different protected class (no known disability) than Plaintiff.

83. Defendants' failure to provide Plaintiff with the reasonable accommodations she requested deprived her of the opportunity to be as productive as her co-workers in the same work environment.

84. Plaintiff was terminated because of her disability.

85. Other employees who were similarly situated, but members of a different protected class (no known disability) than Plaintiff received different terms and conditions of employment.

86. As a direct and proximate cause of Defendants' conduct alleged throughout this Amended Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and

promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

87. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

88. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each Defendant;

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

c. Award medical costs and expenses incurred as a result of defendants' unlawful conduct;

d. Pre and post judgment interest;

e. Punitive damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each individual Defendant;

f. Award statutory attorney's fees, costs, and expenses incurred for this action; and

g. Award such other and further relief as is deemed just and proper.

### Count V
### (Intentional Infliction of Emotional Distress)

89. Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

90. Defendants' actions against Plaintiff alleged throughout the Complaint were extreme and outrageous.

91. As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer severe emotional distress, harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

92. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

93. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each Defendant;

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

c. Award medical costs and expenses incurred as a result of defendants' unlawful conduct;

d. Pre and post judgment interest;

e. Punitive damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each individual Defendant;

f. Award statutory attorney's fees, costs, and expenses incurred for this action; and

-18-

g. Award such other and further relief as is deemed just and proper.

### Count VI
### (42 U.S.C. §1983)

94. Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

95. Plaintiff is a member of a protected class by virtue of her race, national origin and/or disability.

96. As aforedescribed, Defendants' discriminatory and retaliatory treatment of Plaintiff based on her race, national origin and/or disability constitutes a violation of her rights under the Due Process Clause of the Fifth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983.

97. As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer severe emotional distress, harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

98. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

99. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

-19-

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each Defendant;

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

c. Award medical costs and expenses incurred as a result of defendants' unlawful conduct;

d. Pre and post judgment interest;

e. Punitive damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each individual Defendant;

f. Award statutory attorney's fees, costs, and expenses incurred for this action; and

g. Award such other and further relief as is deemed just and proper.

### Jury Demand

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

RUCKER & HENRY, P.C.

By:   /s/  Jeanett P. Henry
Jeanett P. Henry, Bar No. 411052
8701 Georgia Avenue; Suite 403
Silver Spring, MD 20910
(301) 562-1340
JHenry2085@aol.com
***Counsel for Plaintiff***

-20-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on the 2nd day of April, 2014 a true and correct copy of this Amended Complaint was served on the Defendants with copies of the initial complaint, summons and Initial Order as reflected in Affidavits of Service filed by Charles Johnson on April 2, 2014. I further certify that on this 3rd day of April, 2014 copies of this document was served by first-class mail on:

District of Columbia
c/o Tonya Robinson
D.C. Office of Attorney General
441 4th Street, NW
6th Floor South
Washington, D.C. 20001

Debra Crawford
D.C. Department of Human Services
64 New York Ave., NE; 5th Floor
Washington, D.C. 20002

Daisy Carr
D.C. Department of Human Services
64 New York Ave., NE; 6th Floor
Washington, D.C. 20002

Wayne Swann
D.C. Department of Human Services
64 New York Ave., NE; 6th Floor
Washington, D.C. 20002

/s/  Jeanett P. Henry

Dated:  April 3, 2014