### UNITED STATES DISTRICT COURT FOR
### THE DISTRICT OF COLUMBIA
#### Civil Division

| | | |
|---|---|---|
| **ANA RODRIGUEZ** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Civil Action No. 14-cv-00757-ABJ** |
| **2014 CA 000735B** | | |
| **DISTRICT OF COLUMBIA**, *et al.* | : | |
| **Defendants.** | : | |
| _____ | : | |

### SECOND AMENDED COMPLAINT
#### (Employment Discrimination)

COMES NOW Plaintiff, Ana Rodriguez, through counsel, and for her Second Amended Complaint against defendants states as follows:

### Introduction

1.    Ana Rodriguez brings suit for injuries she sustained in violation of 42 U.S.C. § 1983 and the District of Columbia Human Rights Act, D.C. Code, §§2-1401 through 2-1403. Defendants discriminated against Plaintiff on the basis of her race (Hispanic), national origin (Puerto Rican),  participation in prior protected activity, disability, failed to accommodate her disability, and subjected her to a hostile work environment during the course of her employment with the District of Columbia Department of Human Services.

### Jurisdiction & Venue

2.      This Court has jurisdiction over this Complaint because it presents a question of federal law.  28 U.S.C. § 1331.  This Court also has supplemental jurisdiction over Plaintiff's state law claims.

-2-

3.      Venue is appropriate because the employment practices complained of herein occurred in the District of Columbia.

4.      The District was provided with notices of these claims by letters dated July 19, 2013 and February 14, 2014.

**Parties**

5.       Plaintiff, Ana Rodriguez ("Rodriguez"), is an Hispanic resident (Puerto Rican background) of the District of Columbia, who was employed at the D.C. Department of Human Services from July, 2010 until termination of her employment on or about August 16, 2013.

6.      Defendant, District of Columbia, is a governmental organization and municipal corporation.  The Department of Human Services ("DHS") is a subordinate agency of the District of Columbia government.

7.       Defendant, Wayne Swann ("Swann") (African American) was the Director of Human Resources for DHS, at all times relevant herein, and an "employer" within the meaning of DCHRA because he committed and/or aided and abetted the unlawful acts to which Plaintiff was subjected.  He is being sued in his individual capacity.

8.      Defendant, Debra Crawford ("Crawford") (African American) was the Deputy for the Family Services Division of DHS, at all times relevant herein, and an "employer" within the meaning of DCHRA because she committed and/or aided and abetted the unlawful acts to which Plaintiff was subjected.  She is being sued in her individual capacity.

9.      Defendant, Daisy Carr ("Carr") (African American) was the Human Resources

-3-

Liaison Specialist for DHS, at all times relevant herein, and an "employer" within the meaning of DCHRA because she committed and/or aided and abetted the unlawful acts to which Plaintiff was subjected.  She is being sued in her individual capacity.

## Facts

10.     In July, 2010 Rodriguez was hired as a Grade 5, Staff Assistant/Intern in the Family Services Administration ("FSA") of DHS and assigned to work on the Parent and Adolescent Support Services ("PASS") Program.

11.     In the first few months of Rodriguez's  internship, she represented the PASS Program at the monthly senior management meetings where  Defendant Carr and other African American managers  made racially derogatory remarks about  Rodriguez's immediate supervisor, Program Manager Hillary Cairns (Caucasian).  Defendant Crawford participated in some of these meetings and did nothing to stop the obvious, inappropriate racial comments.

12.     The racially derogatory remarks included:  "she rides her bike to work so I know she smells like a wet dog";  "she belongs to a club where white women have black husbands"; " I wonder what her black husband seen in her"; "she is funny looking with no rear end and too skinny"; "I am tired of all these black men dealing with women of other races"; "I can't believe they hired a white woman to work with our black youth"; and "picture her working with poor black families and going on visits, like if she really cares."  Although Rodriguez opposed the racially insensitive remarks through verbal and body language expressions of her discomfort at hearing these comments, Defendant Carr and the others persisted.

13.     In September, 2010 Rodriguez was offered a Grade 9 Staff Assistant position and

-4-

was scheduled to begin orientation for the position on or around September 15, 2010.

14.     However, a few days before the orientation, Rodriguez was participating in another meeting with Defendants Carr and Crawford as well as other African American managers when they again made racially-derogatory comments about Hillary Cairns (Caucasian).  Rodriguez opposed the racially insensitive remarks through verbal and body language expressions of her displeasure at hearing these comments and left the room before the meeting concluded.

15.   Upon information and belief, Carr made negative comments to Cairns about Rodriguez's conduct at the meeting, which Cairns proceeded to address with Rodriguez.  In explaining her actions, Rodriguez disclosed to Cairns some of the racially derogatory comments that Defendant Carr and other African American managers made during the subject meeting and several times during the preceding months and how these comments were offensive and made her feel uncomfortable in the meetings.  Upon information and belief, Cairns shared this information with Defendant Crawford so then shared the incident with other managers and staff.

16.   At the end of that work day, Defendant Crawford's assistant advised Rodriguez that "everyone was mad" with her.

17.   The following Monday when Rodriguez arrived at work to begin her orientation for the Grade 9 Staff Assistant position, she learned that Defendant Carr was re-writing the job description as a pay grade 6, level 4 Clerical Assistant.  At the time, several African Americans in FSA with less or equal qualification to Rodriguez were being paid at the Grade 9 level in clerical assistant positions.

-5-

18.    After Rodriguez complained about the racially-derogatory comments in the managers meeting, she was isolated in the workplace, cut off from overtime and training opportunities, barred from continuing her work with the emergency liaison officer and any other opportunity that could have helped her advance in the workplace.

19.    In addition to stalling the paperwork for Rodriguez's new position, because of her complaints about the racial comments Carr began treating Rodriguez in a negative manner, publicly demeaning and intimidating her about the viability of her continued employment at DHS, including through making the following comments to Rodriguez: "you are here to take notes and not be heard;" "you should be happy with your pay because it could have been less;" "you will not make more than what I started making in the government"; "I know Ondarya Hall who is on the HR Board at 441 and she can change your outcome;;" and "I'm taking vacation, but you will be hired before Thanksgiving if I am not busy."

20.    By the end of December, 2010 Defendant Carr still had not processed the paperwork for Rodriguez's new Clerical Assistant position.  Rodriguez discussed her dismay with the lengthy delay, because she complained in September 2010 about the racial comments in the meetings, wih Defendant Crawford who did nothing to rectify the obvious retaliation by Defendant Carr.

21.    In January, 2011 Rodriguez discussed Carr's discriminatory and retaliatory treatment of her with Defendant Swann, but he did nothing to address the matter.

22.    On or about March 31, 2011, Defendants Crawford and Carr summoned Rodriguez

-6-

to a meeting to discuss her employment at DHS.  Defendants Crawford and Carr disclosed that Rodriguez's paperwork would be processed to place her in the Clerical Assistant position at a Grade 5 with no benefits, but that after a year in the position she would receive benefits and a pay raise.

23.   Beginning in April, 2012 Rodriguez began to inquire about her pay raise and benefits.  After repeated inquiries to Defendants Carr, Swann and Crawford with no response, sometime in July, 2012 Defendant Carr advised that Rodriguez's benefits would take effect by July 20, 2012.  Rodriguez had to wait until October, 2012 before she started to receive benefits but no pay raise.

24.   On January 25, 2013 Rodriguez attended a DHS job fair, applied for and was offered a Grade 9 Social Services Representative position within the Economic Security Administration ("ESA").  One of Rodriguez's co-workers (African American female) also attended the job fair, applied for and was offered a similar position.

25.   On February 6, 2013 Rodriguez was notified that she would no longer be hired for the Grade 9 Social Services Representative position in ESA or any of the nine  positions ESA had open at the job fair, and that all positions had been filled.

26.   As a direct and proximate result of the pattern of discrimination, retaliation and hostile work environment to which Rodriguez was subjected for over two (2) years, she suffered severe emotional distress and was forced to take leave from work under the DC Family and Medical Leave Act ("FMLA").

-7-

27.  On or about April 23, 2013 Rodriguez filed her Chare of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race, national origin and retaliation from April 2012 through February 6, 2013 in terms of her lower pay rate, denial of a promised pay raise, non-selection for the Grade 9 Social Services representative position in the agency's ESA as compared to similarly situated but less qualified African Americans.

28.  When Rodriguez could not return to work at the conclusion of her FMLA leave in June, 2013, she requested accommodation for her emotional disability through August, 2013, based on her doctor's advice and recommendation, but Defendants refused to accommodate her or even engage in the interactive process.

29.  Instead, by letter dated August 14, 2013, Defendants terminated Rodriguez's employment, effective August 16, 2013.

30.  Although Defendants were required to provide Rodriguez with advanced notice of the intent to terminate her, she did not receive such notice because Defendants allegedly sent the notice to an incorrect address despite the agency having Rodriguez's correct address.  As a result, Rodriguez lost the opportunity to challenge her termination.

31.  Based on the pattern of discrimination and retaliation that also created a hostile work environment for Rodriguez, she suffered and continues to suffer severe emotional distress requiring medical treatment.

32.  At all relevant times, Defendants Swann, Crawford, and Carr were acted under color of law and within the scope of their employment for Defendant District of Columbia.

-8-

33.  Defendant District of Columbia is liable for the actions of its managers under the doctrine of *respondeat superior*.

**Count I (DCHRA)**
**(Employment Discrimination on the Basis of Race and/or National Origin)**

34.  Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

35.  As an Hispanic of Puerto Rican descent, Plaintiff is a member of protected classes.

36.  Because of her race and/or national origin, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Second Amended Complaint, including: (a) she was paid/classified at the Grade 5 level from April 2011 through her termination in August 2013, and (b) on February 6, 2013 the offer of the Grade 9 social services representative position in ESA was withdrawn.

37.  Plaintiff was qualified for a position at the Grade 9 level and had been functioning at that level without commensurate pay.

38.  Similarly situated African American employees with less experience and qualifications than Plaintiff were paid at the Grade 9 level, and similarly situated African Americans with less experience and qualifications were hired to fill the ESA positions in February 2013, including the position for which Plaintiff was rejected.

39.  Defendants' foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment.

40.  Defendants knew that Plaintiff is an Hispanic of Puerto Rican descent prior to the adverse actions described throughout this Second Amended Complaint and was aware or should

-9-

have been aware of the discrimination Plaintiff was subjected to because of her race and/or national origin.

41.  Plaintiff's race and/or national origin were determining factors in Defendants' unlawful conduct toward Plaintiff.

42.  The reasons proffered by Defendants for their unlawful conduct are pretextual and Defendants cannot offer any legitimate reason for their unlawful conduct.

43.  Defendants' aforementioned conduct have been intentional, deliberate, willful, malicious, reckless and in callous disregard of Plaintiff's rights because of  her race and/or national origin.

44.  Defendants discriminated against Plaintiff because of her race and/or national origin by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

45.   As a direct and proximate cause of Defendants' conduct alleged throughout this Amended Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

46.  Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

-10-

47.  Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.  Award compensatory damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each Defendant;

b.  Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

c.  Award medical costs and expenses incurred as a result of Defendants' unlawful conduct;

d.  Pre and post judgment interest;

e.  Punitive damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each individual Defendant;

f.  Award statutory attorney's fees, costs, and expenses incurred for this action; and

g.  Award such other and further relief as is deemed just and proper.

### Count II (DCHRA)
### (Employment Discrimination on the Basis of Retaliation)

48.  Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

49.  Plaintiff filed her Charge of Discrimination with the EEOC on or about April 23, 2013.

50.  Defendants subjected Plaintiff to the unlawful conduct and retaliatory actions alleged throughout this Second Amended Complaint, including the following:  (a) in June 2013 refusing

-11-

to accommodate her doctor's request for an additional two months leave after expiration of her FMLA leave; (b) In July 2013 sent her advanced notice of removal to an incorrect address causing her to lose her ability to challenge the removal; and (c) terminating her employment on August 16, 2013.

51.  Defendants subjected Plaintiff to the aforementioned retaliatory employment actions because of her participation and opposition to the unlawful and discriminatory employment practices of Defendants in violation of the DCHRA.

52.  Defendants knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned retaliatory actions when Plaintiff informed them directly and when they learned of Plaintiff's complaint filed with the EEOC.

53.  The adverse retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

54.  Plaintiff's prior protected activity was a determining factor in Defendants' unlawful conduct toward her.

55.  Similarly situated employees (no known EEO activity) were not subjected to the same, similar or any adverse treatment.

56.  Defendants' unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

57.  Defendants' retaliatory conduct have been intentional, deliberate, willful, malicious, reckless and in callous disregard of Plaintiff's rights because of her participation and opposition to Defendants' discriminatory conduct.

-12-

58.   As a direct and proximate cause of Defendants' conduct alleged throughout this Second Amended Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

59.  Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

60.  Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.  Award compensatory damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each Defendant;

b.  Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

c.  Award medical costs and expenses incurred as a result of defendants' unlawful conduct;

d.  Pre and post judgment interest;

e.  Punitive damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each individual Defendant;

f.  Award statutory attorney's fees, costs, and expenses incurred for this action; and

g.  Award such other and further relief as is deemed just and proper.

-13-

## Count III (DCHRA)
### (Retaliation/Hostile Work Environment)

61.  Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

62.  As a result of Plaintiff's protected status and participation in protected activity, Defendants regularly and continually subjected her to retaliatory harassing conduct alleged throughout this Second Amended Complaint, including the following:  (a) at the end of the same day Plaintiff complained to her supervisor about the racial comments, Crawford's assistant said "everyone was mad" at Plaintiff; (b) cancellation of her orientation for the Grade 9 staff assistant position; (c) Carr re-writing Plaintiff's job description to Grade 6, level 4 clerical assistant rather than Grade 9 staff assistant; (d) Plaintiff cut from overtime and training opportunities; (f) Plaintiff barred from continuing her work for the emergency liaison officer; (g) Carr publicly demeaning and humiliating Plaintiff about her job tenure and pay; (h) April 2011 Plaintiff placed in clerical assistant position at Grade 5 with no benefits; (i) denial of benefits to Plaintiff from April 2011 to September 2012; (j) February 6, 2013 withdraw of job offer to Plaintiff to fill the Grade 9 social service representative position in ESA; (k) continuing Plaintiff at the Grade 5 pay level through her date of termination; (l) sent her advanced notice of removal to an incorrect address; and (m) terminating her employment on August 16, 2013.

63.  Defendants' foregoing described conduct created a hostile, abusive and offensive workplace environment in violation of the DCHRA.

64.  Plaintiff believes she was subjected to a hostile work environment based on her race, national origin, disability, and/or because of her engagement in protected activity.

-14-

65.  Defendants' unlawful conduct was unwelcome.

66.  Defendants knew or should have known of the harassment but failed to investigate adequately, and took no effective or remedial action.  Despite Plaintiff's complaints the harassment continued unabated, increased over time and culminated in her unlawful termination.

67.  By failing to take appropriate and effective remedial action, Defendants' acted with malice or with reckless or callous indifference to Plaintiff's complaints and rights.

68.  As a direct and proximate cause of Defendants' conduct alleged throughout this Second Amended Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

69.  Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

70.  Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.  Award compensatory damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each Defendant;

b.  Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

-15-

c.  Award medical costs and expenses incurred as a result of defendants' unlawful conduct;

d.  Pre and post judgment interest;

e.  Punitive damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each individual Defendant;

f.  Award statutory attorney's fees, costs, and expenses incurred for this action; and

g.  Award such other and further relief as is deemed just and proper.

**Count IV (DCHRA)**
**(Disability Discrimination and Failure to Accommodate)**

71.  Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

72.  Plaintiff suffers from depression and as such is a qualified individual with a disability.

73.  After Plaintiff was forced to take leave under the DCFMLA because of Defendants' discriminatory and retaliatory treatment, Defendants knew and/or perceived her as having a disability within the meaning of the DCHRA.

74.  At the end of her FMLA leave, Plaintiff sought accommodation from Defendants' for an additional two months leave to accommodate her disability, but Defendants refused to engage in the interactive process and terminated Plaintiff's employment effective August 16, 2013.

75.  At the relevant times herein, Plaintiff's emotional condition substantially limited major life activities, including her ability to care for herself, ability to concentrate, ability to think, and ability to work without reasonable accommodations.

-16-

76.   At the time of the aforementioned adverse employment actions and to the present, Plaintiff has the necessary knowledge, skills and experience to perform the duties and responsibilities of her position successfully.

77.   Defendants' refusal to engage in the interactive process, refusal to provide Plaintiff with reasonable accommodations for her disability, and termination of her employment are materially adverse actions.  Any reason proffered by Defendants would not be legitimate, but pretext for their unlawful actions.

78.   Prior to the adverse actions complained of herein, Defendants were aware of Plaintiff's disability (depression) and/or perceived her to be disabled.

79.   Further, because Plaintiff was diagnosed with depression she was entitled to a reasonable accommodation under the DCHRA.

80.   The reasonable accommodation Plaintiff requested would not have caused undue burden or hardship on Defendants.

81.   Upon information and belief, Defendants provided an accommodation to similarly situated employees who are members of a different protected class (no known disability) than Plaintiff.

82.   Defendants' failure to provide Plaintiff with the reasonable accommodations she requested deprived her of the opportunity to be as productive as her co-workers in the same work environment.

83.   Plaintiff was terminated because of her disability.

-17-

84.  Other employees who were similarly situated, but members of a different protected class (no known disability) than Plaintiff received different terms and conditions of employment.

85.  As a direct and proximate cause of Defendants' conduct alleged throughout this Amended Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

86.  Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

87.  Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

   **WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

   a.  Award compensatory damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each Defendant;

   b.  Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

   c.  Award medical costs and expenses incurred as a result of defendants' unlawful conduct;

   d.  Pre and post judgment interest;

   e.  Punitive damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each individual Defendant;

   f.  Award statutory attorney's fees, costs, and expenses incurred for this action; and

-18-

g.  Award such other and further relief as is deemed just and proper.

**Count V**
**(Intentional Infliction of Emotional Distress)**

88.  Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they were fully stated herein.

89.  Defendants' actions against Plaintiff alleged throughout the Complaint were extreme and outrageous, including the following (a) at the end of the same day in September 2010 Plaintiff complained to her supervisor about the racial comments, Crawford's assistant said "everyone was mad" at Plaintiff; (b) cancellation of her orientation for the Grade 9 staff assistant position; (c) Carr re-writing Plaintiff's job description to Grade 6, level 4 clerical assistant rather than Grade 9 staff assistant; (d) Plaintiff cut from overtime and training opportunities; (f) Plaintiff barred from continuing her work for the emergency liaison officer; (g) Carr publicly demeaning and humiliating Plaintiff about her job tenure and pay; (h) April 2011 Plaintiff placed in clerical assistant position at Grade 5 with no benefits; (i) denial of benefits to Plaintiff from April 2011 to September 2012; (j) February 6, 2013 withdraw of job offer to Plaintiff to fill the Grade 9 social service representative position in ESA; (k) continuing Plaintiff at the Grade 5 pay level through her date of termination; (l) sent her advanced notice of removal to an incorrect address; and (m) terminating her employment on August 16, 2013.

90.  As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer severe emotional distress, harm, injury and monetary damages -- including but not limited to past and future loss of income, benefits,

-19-

promotion and promotional opportunities, career opportunities, medical expenses and costs --

and is entitled to all available legal and equitable remedies.

91.  Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and

suffering, and her injury is permanent in nature.

92.  Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity

now and in the future, and all other losses stated with Plaintiff not contributing in any way

thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.  Award compensatory damages in excess of Seven Hundred and Fifty Thousand
Dollars ($750,000.00) against each Defendant;

b.  Damages and equitable relief for all harm Plaintiff has sustained as a result of
Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages,
lost job benefits she would have received but for Defendants' unlawful conduct;

c.  Award medical costs and expenses incurred as a result of defendants' unlawful
conduct;

d.  Pre and post judgment interest;

e.  Punitive damages in excess of Seven Hundred and Fifty Thousand Dollars
($750,000.00) against each individual Defendant;

f.  Award statutory attorney's fees, costs, and expenses incurred for this action; and

g.  Award such other and further relief as is deemed just and proper.

## Count VI
### (42 U.S.C. §1983) (Defendants Swann, Crawford & Carr Only)

93.  Plaintiff incorporates the allegations set forth in the preceding paragraphs as if they

were fully stated herein.

-20-

94.  Plaintiff is a member of a protected class by virtue of her race, national origin and/or disability.

95.  As aforedescribed, Defendants' discriminatory and retaliatory treatment of Plaintiff based on her race, national origin and/or disability constitutes a violation of her rights under the Due Process Clause of the Fifth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983, including the following:  (a) at the end of the same day Plaintiff complained to her supervisor about the racial comments, Crawford's assistant said "everyone was mad" at Plaintiff; (b) cancellation of her orientation for the Grade 9 staff assistant position; (c) Carr re-writing Plaintiff's job description to Grade 6, level 4 clerical assistant rather than Grade 9 staff assistant; (d) Plaintiff cut from overtime and training opportunities; (f) Plaintiff barred from continuing her work for the emergency liaison officer; (g) Carr publicly demeaning and humiliating Plaintiff about her job tenure and pay; (h) April 2011 Plaintiff placed in clerical assistant position at Grade 5 with no benefits; (i) denial of benefits to Plaintiff from April 2011 to September 2012; (j) February 6, 2013 withdraw of job offer to Plaintiff to fill the Grade 9 social service representative position in ESA; (k) continuing Plaintiff at the Grade 5 pay level through her date of termination; (l) sent her advanced notice of removal to an incorrect address; and (m) terminating her employment on August 16, 2013.

96.  At all times referenced herein Defendants were acting under color of law.

97.  As a direct and proximate cause of Defendants' foregoing conduct alleged throughout this Second Amended Complaint, Plaintiff suffered and continues to suffer severe emotional distress, harm, injury and monetary damages -- including but not limited to past and future loss

-21-

of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs -- and is entitled to all available legal and equitable remedies.

98.  Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.

99.  Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and in the future, and all other losses stated with Plaintiff not contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.  Award compensatory damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each Defendant;

b.  Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendants' unlawful conduct, including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendants' unlawful conduct;

c.  Award medical costs and expenses incurred as a result of defendants' unlawful conduct;

d.  Pre and post judgment interest;

e.  Punitive damages in excess of Seven Hundred and Fifty Thousand Dollars ($750,000.00) against each individual Defendant;

f.  Award statutory attorney's fees, costs, and expenses incurred for this action; and

g.  Award such other and further relief as is deemed just and proper.

## Jury Demand

Plaintiff demands a trial by jury on all issues so triable.

-22-

Respectfully submitted,


/s/  Jeanett P. Henry_____
Jeanett P. Henry, Bar No. 411052
8701 Georgia Avenue; Suite 403
Silver Spring, MD 20910
(301) 562-1340
JHenry2085@aol.com
***Counsel for Plaintiff***

<u>CERTIFICATE OF SERVICE</u>

   I HEREBY CERTIFY THAT on the 3rd day of October, 2014 a copy of this Second Amended Complaint was served by electronic mail through ECF to:

Sarah L. Knapp, Esquire
Assistant Attorney General
441 - 4th Street, NW
Suite 630S
Washington, D.C. 20001

                              /s/  Jeanett P. Henry


Dated:  October 3, 2014