## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| ANA RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-0757 (ABJ) |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

---

### MEMORANDUM OPINION

Plaintiff Ana Rodriguez brings this action against the District of Columbia and three individual defendants, Wayne Swann, Debra Crawford, and Daisy Carr, asserting claims for employment discrimination, retaliation, hostile work environment, failure to accommodate, intentional infliction of emotional distress, and deprivation of constitutional rights in violation of 42 U.S.C. § 1983, all arising out of her employment with the District of Columbia Department of Human Services ("DHS").   2d Am. Compl. [Dkt. # 13].   Defendants have moved to dismiss plaintiff's hostile work environment, intentional infliction of emotional distress, and section 1983 claims pursuant to Rule 12(b)(6).   Defs.' Renewed Partial Mot. to Dismiss [Dkt. # 14] ("Defs.' Mot."); Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 14] ("Defs.' Mem.").   Upon review of the pleadings and the relevant case law, the Court finds that plaintiff has failed to allege a deprivation of her constitutional rights to equal protection or due process, as required to state a claim under 42 U.S.C. § 1983, and so the Court will dismiss Count VI.   And because the dismissal of plaintiff's lone federal claim divests this Court of its original jurisdiction, the Court will remand the matter to the Superior Court of the District of Columbia.

# BACKGROUND

Plaintiff identifies herself as Hispanic of Puerto Rican descent.  2d Am. Compl. ¶ 5. Defendants Carr, Crawford, and Swann are African American.  *Id.* ¶¶ 7–9.

Plaintiff was hired by DHS in July 2010 as a "Grade 5, Staff Assistant/Intern."  *Id.* ¶ 10. Plaintiff alleges that during the first few months of her internship, she attended meetings where defendant Carr, the Human Resources Liaison for DHS, and "other African American managers," made racially-based derogatory remarks about plaintiff's immediate supervisor, Hillary Cairns, who plaintiff identifies as Caucasian.  *Id.* ¶¶ 9, 11–12.  Plaintiff claims that defendant Crawford, the Deputy for the Family Services Division of DHS, participated in the meetings and did nothing to stop the comments. *Id.* ¶ 8, 11.  Plaintiff states that she "opposed the racially insensitive remarks through verbal and body language expressions," but the comments persisted.  *Id.* ¶ 12.

According to the second amended complaint, in September 2010, plaintiff "was offered a Grade 9 Staff Assistant position and was scheduled to begin orientation for the position on or around September 15, 2010." *Id.* ¶ 13.  She alleges that shortly before the orientation, she attended another meeting with defendants Carr and Crawford and other African American mangers where "they again made racially-derogatory comments" about Cairns.  *Id.* ¶ 14.  Plaintiff claims that she "opposed the racially insensitive remarks through . . . expressions of her displeasure" and left before the meeting ended.  *Id.*  Later, Carr "made negative comments" to plaintiff's immediate supervisor, Cairns, about plaintiff's conduct at the meeting, which Cairns then addressed with plaintiff.  *Id.* ¶ 15.  Plaintiff alleges that, "[i]n explaining her actions, [she] disclosed to Cairns some of the racially derogatory comments that Defendant Carr and other African American managers" had made.  *Id.*  Plaintiff believes that Cairns shared this information with Defendant

Crawford, who then discussed it with other managers and staff. *Id.* She also alleges that, at the end of that workday, Crawford's assistant told plaintiff "everyone was mad" with her. *Id.* ¶ 16.

Plaintiff claims that when she arrived at work the following Monday to begin the orientation for the Grade 9 Staff Assistant positon, "she learned that Defendant Carr was re-writing the job description as a pay grade 6, level 4 Clerical Assistant." *Id.* ¶ 17. She asserts that at that time, "several African Americans . . . with less or equal qualification [sic] to [plaintiff] were being paid at the Grade 9 level in clerical assistant positions." *Id.* Plaintiff also alleges that defendant Carr delayed in completing "the paperwork for [plaintiff's] new position" and "began treating [her] in a negative manner, publicly demeaning and intimidating her about the viability of her continued employment at DHS." *Id.* ¶ 19. After her complaint to Cairns, plaintiff states that "she was isolated in the workplace, cut off from overtime and training opportunities, barred from continuing her work with the emergency liaison officer and any other opportunity that could have helped her advance in the workplace." *Id.* ¶ 18.

By the end of December 2010, plaintiff alleges that defendant Carr had still not processed the paperwork for plaintiff's promotion, and she discussed her "dismay with the lengthy delay" with defendant Crawford and defendant Swann, the Director of Human Resources for DHS, who took no steps to address the situation. *Id.* ¶¶ 7, 20–21. At the end of March 2011, plaintiff states that defendants Carr and Crawford informed her that her paperwork "would be processed to place her in the Clerical Assistant position at a Grade 5 with no benefits, but that after a year in the position she would receive benefits and a pay raise." *Id.* ¶ 22. After repeated inquiries to defendants Carr, Swann, and Crawford about the status of her benefits and raise, plaintiff alleges that she received the benefits in October 2012, but that she did not receive a pay raise. *Id.* ¶ 23.

Plaintiff states that on January 25, 2013, she "attended a DHS job fair, applied for and was offered a Grade 9 Social Services Representative position within the Economic Security Administration ('ESA')," but that on February 6, 2013, she "was notified that she would no longer be hired" for the position. *Id.* ¶ 24–25. Plaintiff alleges that an African American co-worker "also attended the job fair, applied for and was offered a similar position." *Id.* ¶ 24.

As a result of what she characterizes as this "pattern of discrimination, retaliation and hostile work environment," plaintiff states that "she suffered severe emotional distress and was forced to take leave from work under the DC Family and Medical Leave Act." *Id.* ¶ 26. At the conclusion of this leave in June 2013, plaintiff states that she requested an accommodation "for her emotional disability" through August 2013, but defendants "refused to accommodate her." *Id.* ¶ 28. Instead, on August 14, 2013, defendants terminated plaintiff's employment by letter, effective August 16, 2013. *Id.* ¶ 29. Plaintiff alleges that "Defendants were required to provide [her] with advanced notice of the intent to terminate her," but that she never received such notice because "Defendants allegedly sent the notice to an incorrect address despite the agency having [her] correct address." *Id.* ¶ 30.

After filing a charge with the Equal Employment Opportunity Commission in April 2013, *id.* ¶ 27, plaintiff initiated this lawsuit in the Superior Court of the District of Columbia, and defendants removed the case to this Court on April 30, 2014. Defs.' Notice of Removal [Dkt. # 1]. With defendants' consent, plaintiff filed her second amended complaint on October 24, 2014. Notice of Consent to Pl.'s Mot. for Leave to Amend [Dkt. # 12]; 2d Am. Compl. It sets out six counts: Count I – Employment Discrimination on the Basis of Race and/or National Origin in Violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401 *et seq.*; Count II – Employment Discrimination on the Basis of Retaliation in Violation of the DCHRA;

4

Count III – Retaliation/Hostile Work Environment in Violation of the DCHRA; Count IV –
Disability Discrimination and Failure to Accommodate in Violation of the DCHRA; Count V –
Intentional Infliction of Emotional Distress; and Count VI – Violation of 42 U.S.C. § 1983.  2d
Am. Compl. ¶¶ 34–99.  Counts I through V are brought against all defendants; Count VI is only
against the three individual defendants.  *Id.*  Defendants have moved to dismiss Counts III, V, and
VI for failure to state a claim, and they also contend that the individual defendants do not qualify
as supervisors under the DCHRA and that Counts I through IV should therefore be dismissed as
to those defendants.  Defs.' Mem. at 7–13.  Plaintiff opposed the motion, Pl.'s Opp. to Defs.' Mot.
[Dkt. # 15] ("Pl.'s Opp."), and it is now ripe for review.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*,
the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the
tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable
to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief
survives a motion to dismiss."  *Id.* at 678–79.  A claim is facially plausible when the pleaded factual
content "allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged."  *Id.* at 678.  "The plausibility standard is not akin to a 'probability
requirement,' but it asks for more than a sheer possibility that a defendant has acted
unlawfully."  *Id.*, quoting *Twombly*, 550 U.S. at 566.  A pleading must offer more than "labels and
conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*,

550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

## ANALYSIS

The Court begins with Count VI, plaintiff's only federal claim, because it is the sole basis for this Court's jurisdiction. Section 1983 of the Civil Rights Act provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Therefore, for plaintiff's section 1983 claim to survive defendants' motion to dismiss, she must allege facts sufficient to show that "some person has deprived [her] of a federal

right" and that "the person who has deprived [her] of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980), citing *Monroe v. Pape*, 365 U.S. 167, 171 (1961).

As a threshold matter, it is not entirely clear to the Court which federal right plaintiff intends to invoke in her section 1983 claim.  Paragraph 95 of the second amended complaint alleges that Count VI stems from "Defendants' discriminatory and retaliatory treatment of Plaintiff based on her race, national origin and/or disability . . . [in] violation of her rights under the Due Process Clause of the Fifth Amendment," and it lists a variety of employment actions taken against plaintiff as the basis for this claim.  2d Am. Compl. ¶ 95.  Defendants, like the Court, presumed that plaintiff was therefore asserting a section 1983 claim for a violation of her Fifth Amendment due process rights based on those personnel decisions, including the withdrawn promotions and plaintiff's termination.  *See, e.g.*, Defs.' Mem. at 9 (stating that plaintiff has failed to state a Fifth Amendment due process claim because she has not identified "a divestment of a property interest").  But plaintiff muddied the waters in her opposition to defendants' motion when she stated, "[t]he Fourteenth Amendment's Equal Protection Clause requires states to treat similarly situated persons alike," and "Plaintiff's Fifth Amendment due process claims are that the individual defendants discriminated and retaliated against her, thereby depriving her of her right to be treated equally as her similarly situated co-workers, outside her protected classes (race, national origin, disability, and engagement in protected activity)."  Pl.'s Opp. at 12–13.

It is true that "[t]he Due Process Clause, which is applicable to the District of Columbia, 'contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups.'" *Acosta v. Univ. of D.C.*, 528 F. Supp. 1215, 1224–25 (D.D.C. 1981), quoting *Washington v. Davis*, 426 U.S. 229, 239 (1976), and citing *Bolling v.*

7

*Sharpe*, 347 U.S. 497 (1954).  Despite the inartful drafting of the second amended complaint, the Court therefore surmises that plaintiff is attempting to state such a Fifth Amendment equal protection claim.  But in the end, whether Count VI is predicated on a violation of plaintiff's right to equal protection or to due process, the Court finds that she has failed to allege that the individual defendants deprived her of any constitutional interest that would give rise to a viable section 1983 claim.  Accordingly, Count VI will be dismissed.

I.      **Plaintiff has failed to state a plausible section 1983 claim for a violation of her constitutional right to equal protection.**

Plaintiff claims that the individual defendants "depriv[ed] her of her right to be treated equally as her similarly situated co-workers," Pl.'s Opp. at 13, when they engaged in "discriminatory and retaliatory treatment . . . based on her race, national origin and/or disability." 2d Am. Compl. ¶ 95.  But she has not alleged a single fact that would imply any connection between her membership in a protected class and the employment actions of which she complains, and so, the Court finds that plaintiff has failed to state a plausible claim that the individual defendants deprived her of her right to equal protection in violation of section 1983.

To state a claim for intentional discrimination under the Equal Protection Clause, a plaintiff "must plead and prove that the defendant acted with discriminatory purpose."  *Iqbal*, 556 U.S. at 676.  "[P]urposeful discrimination requires more than 'intent as volition or intent as awareness of consequences'; it instead involves a decisionmaker's undertaking a course of action 'because of, not merely in spite of, [the action's] adverse effects upon an identifiable group.'"  *Id.*, quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); *see also Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009) (reversing district court's finding that the plaintiff stated a section 1983 equal protection claim where the complaint's "spare facts and

allegations . . . do 'not permit the court to infer more than the mere possibility of misconduct'"),

quoting *Iqbal*, 556 U.S. at 679.

Plaintiff fails to state a plausible claim that the individual defendants took action against

her because of, not merely in spite of, her membership in a protected class. *See Iqbal*, 556 U.S. at

676.  There are no factual allegations in the second amended complaint that connect plaintiff's

race, national origin, or disability to the adverse employment decisions of which she complains.

Plaintiff makes no express claim that any of the individual defendants' actions were motivated by

some discriminatory animus.  And the Court cannot reasonably infer from any of her allegations

that the individual defendants acted with a discriminatory intent or purpose, *see id.* at 676,

especially where, as here, the complaint does not even identify which, if any, of the individual

defendants were responsible for the allegedly discriminatory acts at issue.  *See, e.g.*, 2d Am.

Compl. ¶¶ 24–25 (stating that plaintiff "was notified that she would no longer be hired for the

Grade 9 Social Services Representative position in ESA," but failing to identify who made the

decision); *id.* ¶¶ 29–30 (alleging generally that "Defendants terminated [plaintiff's] employment"

and that "Defendants allegedly sent the [termination] notice to an incorrect address").

Plaintiff does state that when she found out that her promotion would be rewritten from

Grade 9 Staff Assistant to Grade 6 Clerical Assistant, "several African Americans . . . with less or

equal qualification [sic] to [plaintiff] were being paid at the Grade 9 level in clerical assistant

positions."  *Id.* ¶ 17.  She also claims that while her offer for the Grade 9 Social Services

Representative position with ESA was later withdrawn, "[o]ne of [her] co-workers (African

American female) also attended the job fair, applied for and was offered a similar position."  *Id.*

¶¶ 24–25.  However, despite mentioning the race of the other recipients of these positions, plaintiff

has offered no facts tying the alleged adverse decisions to *her* race or national origin.[1]  Such conclusory allegations of discrimination, without any supporting information, "stop[] short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 557; *see also Ekwem v. Fenty*, 666 F. Supp. 2d 71, 78–79 (D.D.C. 2009) (dismissing section 1983 equal protection claim based on age and national origin where the plaintiff's "only factual support is the conclusory allegation that [o]lder supervisors and caseworkers, particularly those of a different national origin, were general[ly] assigned inordinate numbers of cases and threatened with disciplinary action, that most of the other supervisors were in charge of five or fewer caseworkers, and that he supervised more caseworkers (eight) than any other") (internal quotation marks omitted).

Plaintiff also alleges that defendant Carr made "publicly demeaning and intimidating" comments to her, 2d Am. Compl. ¶ 19, but not one of those comments centered in any way upon plaintiff's status as a member of a protected class:

> Carr began treating [plaintiff] in a negative manner . . . including through making the following comments to [plaintiff]: "you are here to take notes and not be heard;" "you should be happy with your pay because it could have been less;" "you will not make more than what I started making in the government"; "I know Ondarya Hall who is on the HR Board at 441 and she can change your outcome;; [sic]" and "I'm taking vacation, but you will be hired before Thanksgiving if I am not busy."

*Id.*  Rather, as plaintiff herself admitted, they focused on "the viability of [her] continued employment at DHS."  *Id.*  Such facially-neutral comments cannot support plaintiff's equal protection claim.

---

1  If anything, the second amended complaint appears to indicate that it is plaintiff's contention that two of the individual defendants, Carr and Crawford, turned on plaintiff when they learned that she had revealed to her supervisor what they were saying behind her back.  Even if that is sufficient to state a retaliation claim, being a whistleblower is not a protected class under the Equal Protection Clause.

Because there is nothing in the second amended complaint connecting plaintiff's race, national origin, or disability to the employment actions about which she complains, she has not shown that the individual defendants violated her right to equal protection, and her section 1983 claim on that ground must fail.

## II.   Plaintiff has failed to state a plausible section 1983 claim for a violation of her Fifth Amendment right to due process.

While the Court suspects that plaintiff meant only to state a section 1983 equal protection claim, in an abundance of caution, it will also examine Count VI as if plaintiff intended it be brought as a section 1983 Fifth Amendment due process claim. *See* 2d Am. Compl. ¶ 95 ("Defendants' discriminatory and retaliatory treatment of Plaintiff based on her race, national origin and/or disability constitutes a violation of her rights under the Due Process Clause of the Fifth Amendment to the United States Constitution . . . ."). "The usual due process analysis . . . has been two-staged: identifying the existence of a constitutionally protected property or liberty interest and then assessing the appropriate measure of procedural protection due." *Colm v. Vance*, 567 F.2d 1125, 1127–28 (D.C. Cir. 1977). Thus, as a threshold matter, in order to state a claim for the denial of due process, plaintiff must allege that she was deprived of some liberty or property interest that is protected by the Fifth Amendment.

But the second amended complaint does not identify any such interest. Plaintiff does not claim that her liberty was infringed. And while she does allege that she was terminated without adequate notice, 2d Am. Compl. ¶¶ 29–30, in order to establish a property interest in her job at DHS, plaintiff "must show more than a unilateral expectation that her employment would not be terminated." *Piroglu v. Coleman*, 25 F.3d 1098, 1104 (D.C. Cir. 1994). Rather, "[s]he must show 'a legitimate expectation, based on rules (statutes or regulations) or understandings (contracts,

express or implied), that [s]he would continue in [her] job.'" *Id.*, quoting *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988).

Here, plaintiff cannot show a legitimate expectation that she would maintain her DHS position, and therefore, she cannot demonstrate a related property interest in her employment, because the second amended complaint contains no allegations suggesting that plaintiff was anything other than an at-will employee.  "At-will employees (as opposed to those terminable only for cause) have no property interest in their employment 'because there is no objective basis for believing that they will continue to be employed indefinitely.'"  *Evans v. District of Columbia*, 391 F. Supp. 2d 160, 165 (D.D.C. 2005), quoting *Hall*, 856 F.2d at 265.  So even taking plaintiff's allegations as true that "Defendants were required to provide [her] with advanced notice of the intent to terminate her" and that she did not receive such notice, 2d Am. Compl. ¶ 30, she has failed to show that she had a property interest in her DHS position sufficient to trigger the procedural protections afforded by the Fifth Amendment.

Plaintiff similarly cannot state a due process claim based on the two promotion offers that she alleges were extended to her and then later withdrawn.  *See id.* ¶¶ 13, 17, 24–25.  "As a general matter, of course, a government employee has no property entitlement to a promotion . . . ."  *Colm*, 567 F.2d at 1130.  While "[t]here may . . . be situations where such an entitlement would exist as where 'a promotion would be virtually a matter of right for example, where it was solely a function of seniority or tied to other objective criteria . . . ,' or where there is a 'common law' of promotion sufficient to create a de facto 'right' to promotion," *id.*, quoting *Schwartz v. Thompson*, 497 F.2d 430, 433 (2d Cir. 1974), nothing in the second amended complaint indicates that such circumstances are present here.

In fact, the allegations make clear that the promotions were very much uncertain:  plaintiff had been "offered" the positions, and her orientation was scheduled for one of them, but neither had become final such that it gave rise to a definite property interest.  *See* 2d Am. Compl. ¶¶ 13, 17, 19–20 (acknowledging that defendant Carr had the ability to "re-writ[e] the job description" for the Clerical Assistant promotion before her orientation was scheduled, and that the paperwork for the promotion was not processed until months later); *id.* ¶¶ 24–25 (stating that plaintiff was informed that "she would no longer be hired" by ESA for the Social Services Representative promotion, implying that she had not yet been hired for that position).  Such an "expectancy" in a job position is not the same as "a protected property interest" sufficient to state a Fifth Amendment due process claim.  *Nat'l Treasury Emp. Union v. Reagan*, 509 F. Supp. 1337, 1341 (D.D.C. 1981) (finding that offers of federal employment did not give rise to protected property interest for due process purposes where the plaintiffs had received "mere offers of jobs which do not rise to the level of 'appointments' to the federal civil service"); *see also Krodel v. Young*, No. 80-3183, 1981 WL 27024, at *2 n.1 (D.D.C. July 9, 1981), *aff'd*, 748 F.2d 701 (D.C. Cir. 1984) ("[W]hile plaintiff contends he has a property interest in his job, he clearly has no property interest in being promoted, for that is a mere 'expectation' rather than a 'legitimate entitlement.'"), quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

For those reasons, the Court finds that plaintiff has failed to identify a cognizable due process interest sufficient to state a section 1983 claim that the individual defendants violated her Fifth Amendment rights.

### III.    Plaintiff has failed to allege sufficient facts with respect to the individual defendants.

Finally, whether Count VI is based upon due process or equal protection, it fails for another reason, at least as to defendants Swann and Crawford:  plaintiff has not alleged any facts tending

to show that they were the actors responsible for depriving her of a constitutional right.  A plaintiff asserting a section 1983 claim against individual actors "must produce evidence 'that each [one], through the official's own individual actions, has violated the Constitution.'"  *Elkins v. District of Columbia*, 690 F.3d 554, 564 (D.C. Cir. 2012), quoting *Iqbal*, 556 U.S. at 676.

Plaintiff alleges only that defendant Swann "did nothing to address the matter" when she complained to him about her treatment by defendant Carr and the delay in her pay raise and benefits.  2d Am. Compl. ¶¶ 21, 23.  As for defendant Crawford, plaintiff states that Crawford was present at some of the meetings where the racial comments were made, *id.* ¶¶ 11, 14, that Crawford's assistant told plaintiff that "everyone was mad" at her, *id.* ¶ 16, that Crawford discussed plaintiff's promotion and benefits with her and defendant Carr, *id.* ¶ 22, and that Crawford "did nothing" after plaintiff complained about her mistreatment.  *Id.* ¶¶ 20, 23.  Not one of these allegations shows that defendants Crawford and Swann deprived plaintiff of equal protection or of a protected liberty or property interest.  *See, e.g.*, *Martin v. District of Columbia*, 968 F. Supp. 2d 159, 168 (D.D.C. 2013) (dismissing section 1983 claim because such a claim "cannot be based on mere knowledge and acquiescence to the behavior of a subordinate," and because the complaint contained no allegations that the defendant "otherwise engaged in any affirmative misconduct").

It is a somewhat closer case for defendant Carr – plaintiff alleges that it was Carr who rewrote the job description from a Grade 9 to a Grade 6, and that Carr "stall[ed] the paperwork" for her new position.  2d Am. Compl. ¶¶ 17, 19.  But as discussed above, there are no facts alleged from which one could infer that Carr's conduct was based upon plaintiff's membership in a protected class, and plaintiff's desire for a promotion does not rise to the level of a property interest

protected by the Fifth Amendment.  So plaintiff's section 1983 claim against Carr cannot survive defendants' motion to dismiss.

For those reasons, the Court will grant defendants' motion in part and dismiss plaintiff's section 1983 claim.

## IV.    The Court declines to exercise supplemental jurisdiction over the remaining claims.

Only plaintiff's District of Columbia statutory and common law claims remain.  "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy . . . ."  28 U.S.C. § 1367(a).  The exercise of supplemental jurisdiction is within a court's discretion, *Shekoyan v. Sibley Int'l,* 409 F.3d 414, 423 (D.C. Cir. 2005), and a district court may decline to maintain such jurisdiction where it has "dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  In deciding whether to exercise supplemental jurisdiction in the absence of a federal claim, a court balances considerations of "judicial economy, convenience, fairness, and comity."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  "Typically, if all federal law claims have been dismissed, the factors counsel against exercising supplemental jurisdiction."  *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 60 (D.D.C. 2011) (declining to exercise supplemental jurisdiction over District of Columbia statutory and common law claims after dismissal of civil rights claim brought under 42 U.S.C. § 1983).

Here, with the dismissal of Count VI, no claim remains over which the Court has original jurisdiction.  And the Court finds that the balance of the factors weighs against exercising supplemental jurisdiction over plaintiff's remaining District of Columbia statutory and common law claims.  Accordingly, the Court will decline to exercise its jurisdiction over the remaining claims, and it will not reach the other arguments raised in defendants' motion to dismiss.

15

## CONCLUSION

Because the Court finds that plaintiff has failed to state a plausible claim for the deprivation of constitutional rights in violation of 42 U.S.C. § 1983, it will grant defendants' motion to dismiss in part and dismiss Count VI of the second amended complaint.  And because the dismissal of the lone federal claim divests this Court of jurisdiction, it will remand the case and the remainder of defendants' motion to dismiss to the Superior Court of the District of Columbia for further proceedings.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  July 27, 2015